UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NO. 20-mj-6383-MPK

UNITED STATES

v.

KELVIN BARROS

ORDER ON GOVERNMENT'S MOTION FOR DETENTION

KELLEY, U.S.M.J.

I.    Introduction.

Kelvin Barros is charged by complaint with RICO conspiracy in violation of 18 U.S.C. §
1962(d); conspiracy to distribute controlled substances in violation of 18 U.S.C. § 846; and
possession with intent to distribute controlled substances in violation of 18 U.S.C. § 841(a)(1). (#1.)
He is charged along with fourteen other men with being part of a criminal organization, a street
gang called "NOB," an abbreviation of Norton, Olney, and Barry Streets in Boston. *Id*. at 1. The
government alleges that gang members committed violent crimes in aid of racketeering, including
murders, attempted murders, armed robberies, drug trafficking, sex trafficking, and illegal firearms
crimes, in Boston, Randolph, New Bedford, Stoughton, Brockton, and other communities near
Boston and on Cape Cod.  *Id*. at 8-9. The alleged crimes, including multiple murders and shootings,
were committed over a period of about the past three years. *Id*. at 9. Many of the crimes targeted
rival street gang members. *Id*.

The government alleges that members of the gang use certain hand signs, initials, and numbers to denote membership in the gang, including the number "7981." *Id*. at 11-12. The gang hand signs and numbers, along with gang-related clothing, are alleged to be openly used in gang-related videos. *Id*. at 11.

Mr. Barros had an initial appearance on June 23, 2020. (#27.) The government moved for detention under 18 U.S.C. § 3142(f)(1)(A), on grounds that he is a flight risk and danger to the community, and (f)(2)(B), that there is a serious risk that he will obstruct justice or threaten, injure or intimidate prospective witnesses. Mr. Barros filed a motion for release on June 30 (#45),  and a detention and probable cause hearing was held on July 1. (#52.) After the hearing, the parties filed further memoranda along with numerous exhibits. (##62, 81, 83, 94, 100, 112, 113.)

For the reasons set out below, the court does not find that the government has met its burden on risk of flight, but finds that the government has met its burden on danger to the community and obstruction/intimidation grounds, and orders that Mr. Barros be detained pending trial.

II.    Legal Standard.

Under the Bail Reform Act, a defendant may only be detained pending trial if the government establishes either by clear and convincing evidence that the person poses "a danger to the safety of any other person or the community if released," or by a preponderance of the evidence that the person poses a serious risk of flight. 18 U.S.C. § 3142(f); *United States v. Patriarca*, 948 F.2d 789, 791-793 (1st Cir. 1991). If there is some risk, the court should consider whether a combination of release conditions "will serve as a reasonable guard." *Id.* at 791.

In determining whether suitable release conditions exist, the judicial officer must take into account the following: (1) the nature and circumstances of the offense charged; (2) the

weight of the evidence against the person; (3) the history and characteristics of the person,
including family ties, employment and other factors; and (4) the nature and seriousness of the
danger posed by the person's release. 18 U.S.C. § 3142(g). Each of these factors must be
weighed, and the decision whether to release is an individualized one. *Patriarca*, 948 F.2d at
794.

The government bears the burden of persuasion to establish that no condition or
combination of conditions will reasonably assure the appearance of the person as required and
the safety of any other person and the community. *United States v. Dillon*, 938 F.2d 1412, 1416
(1st Cir. 1991). Where, as here, a person is charged with an offense for which a maximum term of
imprisonment of ten years or more is prescribed in the Controlled Substances Act, there is a
rebuttable presumption that no conditions will assure the appearance of the person or the safety of
the community. 18 U.S.C. § 3142 (f)(1)(C). The presumption imposes a burden of production on the
defendant to come forward with "some evidence" to demonstrate that he is not a danger to the
community or a flight risk. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985), *abrogated on
other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990). Without credible evidence
to rebut the presumption, the presumption alone may justify detention. *United States v. Alatishe*,
768 F.2d 364, 371 (D.C. Cir. 1985). Notwithstanding this rebuttable presumption, the burden of
persuasion always remains with the Government.  *Jessup*, 757 F.2d at 381.

III.    <u>Analysis</u>.

At the outset, the court finds that due to the information contained in his filings in support of
his motion for release, and argument of counsel, Mr. Barros has overcome the presumption of
detention, and will consider only whether the government has met its burden on the grounds on
which it moved for detention.

With regard to risk of flight, Mr. Barros does have ties to Cape Verde, where he lived for about five years when he was younger, and he has traveled extensively in connection with his job as a musician. However, he has strong ties to the Boston community and has submitted numerous letters from supporters, including family members, friends, and others. (##45-2, 48, 49.) Relatives have offered to post their home as surety for his return to court. (#81 at 10.) Most important, he turned himself in in connection with this case. While he was charged in Rhode Island for failure to appear/answer a summons, that case was dismissed, and his record does not otherwise suggest that he has any history of not coming to court when he is required to appear. It is unclear what sentence Mr. Barros is facing under this RICO charge, and that will not become clear until the government's evidence is produced in full. For all these reasons, the court finds that the government has not met its burden on risk of flight, and that there are conditions that could reasonably ameliorate this risk.

The questions of danger to the community and whether Mr. Barros poses a risk of obstructing justice and/or intimidating witnesses on release are intertwined. First, the government's complaint and other filings establish that Mr. Barros is an active member of the NOB gang. The government states that Mr. Barros "has been involved in the production/performance of numerous rap recordings and videos promoting NOB's illegal activities, including its violent crimes and drug trafficking." (#1-1 at 3.) A video on which the government relies, "*Dead Opps. Pt. 3*," vividly illustrates Mr. Barros's involvement with the gang. It prominently features Mr. Barros and a leader of the gang, Michael Brandao, as they and other members wear gang-related clothing, pose with firearms, make certain hand signs, make gestures that indicate that they are shooting people, repeatedly refer to the gang, and talk about killing rival gang members on behalf of the gang. The court rejects Mr. Barros's assertions that the symbols on the clothing everyone is wearing in the video and the stylized hand gestures they make have nothing to do with the gang.

Embedded in the video is another video, apparently taken with a cell phone, showing someone whom the government claims is an actual victim, who previously had been intimidated and threatened by gang members for supposedly cooperating with law enforcement. After the embedded video fades, Mr. Brandao then taunts the victim, threatening him further *("Snitch boy!/Yeah, you told on J-Money and Mook/So you know when I catch you, it's lit.")*. The court agrees with the government that the video "is a public statement that NOB members/associates will retaliate against individuals who cooperate against the gang." (#62 at 2.). *Id.*[1] Further, if the government's assertion that the video depicts an actual victim is true, then the video depicts a crime, because the gang is threatening the victim again.

The government alleges that Mr. Barros participated in other gang-related criminal activities such as drug dealing, sex trafficking, and conspiracy to commit murder. The court finds that the evidence the government has proffered on the sex trafficking and conspiracy to commit murder

---

[1] A second video, entitled "*RICO*," on which the government also relies to argue that Mr. Barros seeks to obstruct justice and intimidate witnesses, shows only Mr. Barros singing. The government asserts that at least one part of the video must have been recorded after Mr. Barros knew that he was charged in federal court, because Mr. Barros says that he is "worried about the feds, cuz they're hittin' us with the RICO." The government asserts that Mr. Barros's next statement in the video, that he is worried that others will not "stick to the G-code," after which he holds a finger to his lips in the classic "shush" gesture, means that Mr. Barros was warning others not to cooperate with the government in connection with this case. *Id.* at 4.  Mr. Barros has submitted a letter to the court in which he goes line by line through the lyrics of the video, providing an innocent explanation for everything he says, including statements about his always carrying a gun, selling fentanyl, killing people, having others kill people for him, and so on. (#81-10.) The court finds almost all of Mr. Barros's assertions about the meaning of what he said in the video unconvincing; some of the explanations border on the absurd. Mr. Barros has also submitted evidence from a forensic expert, which he claims shows that the video was recorded well before the indictment in this case was made public, which, if true, raises some interesting questions about Mr. Barros's clairvoyance. At any rate, because of the controversy concerning when the video was recorded, the court does not consider it with regard to the question of detention.

accusations is thin. *See,* e.g., #1 at 24-25. The evidence that Mr. Barros possessed with intent to distribute about 125 grams of cocaine is overwhelming, however. *Id*. at 33-34.

Mr. Barros is 24 years old. He has lived in Boston for about 15 years; prior to that he lived in Cape Verde from about 2000 to 2005. He has been pursuing a music career and traveled regularly around the country in connection with his work as a musician.

His criminal record consists of numerous dismissed charges, including assault and battery, kidnapping, assault and battery with a dangerous weapon, conspiracy to violate the controlled substances act, trafficking in cocaine, breaking and entering a motor vehicle, and making threats. He has no convictions. He has a case pending in the Suffolk Superior Court for trafficking in cocaine from 2018 that concerns the same conduct as is charged here.  While he was on release in that case, he was arrested in New Jersey in February 2020 and charged with possession of illegal drugs (promethazine and codeine medication), possession of marijuana and hashish, and manufacturing or distributing promethazine and codeine.[2]

Mr. Barros has injuries related to his previously being shot multiple times, including a damaged lung. The court accepts as true that he uses an inhaler daily, is medically compromised, and is more vulnerable than most to the COVID-19 virus because of his injuries. The court notes, however, that prior to his turning himself in on this matter, he was travelling extensively across the country in connection with his work, including to California and Florida. The court further notes

---

[2] The government, in one filing, quotes at length from a recorded phone conversation in which Mr. Barros's music manager, Christopher Mann, discussed with an incarcerated member of the gang how he was trying to coerce a person who was in the car with Mr. Barros when he was arrested in New Jersey (whom the government alleges is "a drug dealer within the NOB drug network"), to claim ownership of the drugs, so that Mr. Barros would not face those charges. (#94 at 3-5.) There is no indication in the call that Mr. Barros knew about his manager's efforts.

that at the Wyatt Detention Facility at this time, there are two inmates who currently have tested positive, both of whom were identified on intake, during a period when they were quarantined according to protocol. The court has been receiving regular updates from all the facilities in which its federal detainees are held, and the court takes notice of the fact that the administrators at the Wyatt facility have taken extraordinary, and for the most part, successful, steps to contain the virus.

This case presents a close question and the court has not come to its decision easily. Mr. Barros is undeniably a member of a gang that has committed numerous serious crimes, over a period of years, including murders. The question, of course, is what specific acts Mr. Barros committed as a member of the gang. While the government does have some evidence that Mr. Barros committed crimes in connection with the gang other than selling drugs, that evidence is not overwhelming. He has, however, promoted the gang, and furthered its goal of intimidating witnesses, in videos posted on public fora.

There is also the question whether Mr. Barros has misled the court. The court finds that Mr. Barros's efforts to distance himself from the gang, for instance, by asserting that the number "7981," which he has tattooed on his body and which is part of his stage name, has nothing to do with the gang, or that the initals "HSM" are not affiliated with the gang, are not credible. The court also does not accept Mr. Barros's argument that he was merely adopting a fake persona as a gang member in order to promote his career in music.

Section 3142 (g)(4) requires the court to consider the nature and seriousness of the danger to any person or the community that would be posed by the person's release. The court does not have confidence that if released, Mr. Barros would not continue to promote the gang and further its goal of intimidating witnesses and obstructing justice, particularly given his dissembling explanations concerning his conduct thus far. Nor does the court have confidence that Mr. Barros would refrain

7

from committing crimes while on release, given that while on release from the Suffolk Superior

Court case charging trafficking in cocaine, he was arrested in New Jersey on charges of possessing

illegal drugs.

Based upon a consideration of the balance of the factors under Section 3142(g), the court

concludes, by clear and convincing evidence, that there is no condition or combination of conditions

that would reasonably assure the safety of others and the community, or reasonably assure that Mr.

Barros will not obstruct justice or threaten, injure or intimidate prospective witnesses.

<u>ORDER OF DETENTION PENDING TRIAL</u>

IT IS ORDERED:

1. That defendant be committed to the custody of the Attorney General or his designated

representative, for confinement in a corrections facility separate, to the extent practicable, from

persons awaiting or serving sentences or being held in custody pending appeal;

2. That he be afforded a reasonable opportunity for private consultation with counsel; and

3. That on order of a court of the United States or on request by an attorney for the

Government, the person in charge of the corrections facility in which he is detained and confined

shall deliver him to an authorized Deputy United States Marshal for the purpose of any appearance

in connection with a court proceeding.

RIGHT OF APPEAL

THE PERSON DETAINED BY THIS ORDER MAY FILE A MOTION FOR
REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).


/s/ M. Page Kelley
M. PAGE KELLEY
Chief United States Magistrate Judge

September 2, 2020