UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES | ) ) ) | |
| v. | ) ) | Criminal No. 20-10197-7-LTS |
| KELVIN BARROS. | ) ) ) | |

ORDER ON MAJOR PRETRIAL MOTIONS (DOC. NOS. 388-392)

April 27, 2022

SOROKIN, J.

Kelvin Barros has filed five pretrial motions. One requests an order requiring the government to disclose the predicate acts underlying the RICO conspiracy charged in this case. Doc. No. 388.[1] Two others urge dismissal for lack of subject matter jurisdiction and severance of Barros's trial from that of his co-defendants. Doc. Nos. 389, 390. The final pair of motions seek to suppress evidence Barros anticipates the government will offer against him at trial. Doc. Nos. 391, 392. The government has opposed the motions. Doc. Nos. 436, 438, 439, 440, 442. The Court DENIES each of Barros's motions for the reasons identified below, finding no hearing or further argument is warranted.

I. **PREDICATE ACTS**

In a one-page motion, Barros asks the Court to "compel[] the government to itemize the acts of alleged criminal activity that would constitute predicate acts sufficient to prove that he was involved in" the NOB street gang and, thus, the RICO conspiracy charged in Count One of the Second Superseding Indictment. Doc. No. 388. This request suffers from obvious

---

[1] Citations to "Doc. No. __ at __" reference items appearing on the court's electronic docketing system, and pincites are to the page numbers in the ECF header.

procedural and substantive flaws highlighted by the government. See generally Doc. No. 436 (noting the absence of any developed legal argument by Barros, the burden a defendant bears in order to show such a disclosure is necessary, and the various sources of information available to Barros providing the details he purports to seek with sufficient specificity to allow him to prepare a defense and avoid prejudicial surprise).

Barros's Motion Seeking Disclosure of Predicate Acts (Doc. No. 388) is DENIED.

II. **INTERSTATE NEXUS**

Barros next argues the "indictment against [him] alleging a 'RICO conspiracy'" must be dismissed, because "all of the underlying 'predicate acts' consist of low level local crimes," with "absolutely no evidence of interstate offenses affecting commerce." Doc. No. 389 at 1. Not so.

Preliminarily, though he requests dismissal of "the indictment," Doc. No. 389 at 3, the challenge Barros articulates is directed only to the Count One RICO conspiracy. He advances no argument targeting the federal crimes with which he is charged in Count Two (Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 846), Doc. No. 398 at 9-10; Count Eight (Possession with Intent to Distribute Cocaine; Aiding and Abetting in violation of 21 U.S.C. § 841 (a)(1) and 18 U.S.C. § 2), Doc. No. 398 at 16; and Count Ten (Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i)), Doc. No. 398 at 18. Those charges plainly confer subject matter jurisdiction on this Court.

As to Count One, Barros's quest for dismissal fails for reasons the government explains in its opposition memorandum. See Doc. No. 438 at 4-9. A grand jury found, and the operative indictment expressly alleges, the elements of a RICO conspiracy, including the requisite "de minimis" effect on interstate commerce. E.g., Doc. No. 398 at 3 (describing activities of the

alleged enterprise in "Massachusetts and elsewhere," including "interstate and foreign travel in aid of racketeering enterprises"); id. at 4 ("NOB was engaged in, and its activities affected, interstate and foreign commerce."); id. at 5 (alleging the enterprise engaged in drug distribution within Massachusetts "and elsewhere"); see United States v. Nascimento, 491 F.3d 25, 37 (1st Cir. 2007). Such allegations—presumed to be true under the standard applicable at this stage of the proceedings—are all the law requires.

Accordingly, Barros's Motion to Dismiss (Doc. No. 389) is DENIED.

III. **SEVERANCE**

Contrasting the acts of violence he expects will be attributed to many of his co-defendants with his own status as "an accomplished musician" lacking a serious criminal record, Barros urges that "a severance is necessary to insure that he receives a fair trial in the interest of justice."[2] Doc. No. 390 at 1-2. He "acknowledges," however, "that in an alleged conspiracy trial severance is not preferred." Id. at 3. Again, the government responds with a memorandum identifying several substantial defects in Barros's request. See generally Doc. No. 440.

For one thing, Barros is charged in not one but two counts alleging his participation in criminal conspiracies involving multiple co-defendants. He does not suggest the government improperly joined the charges it brought in the operative indictment. See Fed. R. Crim. P. 8(b). Thus, his request runs headlong into the "general rule . . . that defendants who are properly joined in an indictment should be tried together"—a rule with "special force in conspiracy cases, in which the severance of coconspirators' trials will rarely, if ever, be required." United States v.

---

[2] Part of Barros's argument for severance is in tension with the challenge to this Court's jurisdiction advanced in his motion to dismiss, insofar as his severance motion references criminal conduct by his co-defendants in "jurisdictions in this state as well as Rhode Island and Maine." Doc. No. 390 at 3.

3

Floyd, 740 F.3d 22, 36 (1st Cir. 2014) (quotation marks omitted).  Nothing before the Court establishes that this case falls into the exceedingly narrow exception to this general rule.

Moreover, though Barros characterizes as "minimal" his involvement in "the tsunami of allegations of bloody, violent gang warfare" at issue in this case, Doc. No. 390 at 3, the government's summary of evidence it intends to offer at trial tells a different story.  See Doc. No. 440 at 3-10 (describing evidence suggesting Barros armed a co-defendant, encouraged and facilitated acts of violence by others, and planned to participate in acts of violence himself).[3]  According to the government, Barros's characterization is undermined by his own musical recordings.  See id. at 2 (describing rap lyrics by Barros referencing his membership in NOB and participation in drug trafficking and acts of violence).  It is neither appropriate nor possible for the Court to resolve now the parties' dispute about the extent of Barros's involvement in the criminal acts undertaken by those affiliated with the NOB gang.  That will be a question for the jury to resolve, upon consideration of the evidence summarized here by both parties and guided by any limiting instructions the Court deems necessary in the course of the trial.

Thus, Barros's Motion to Sever (Doc. No. 390) is DENIED.

IV.     **ELECTRONIC COMMUNICATIONS**[4]

In the first of his two motions to suppress, Barros challenges "all evidence obtained as a result of searches of cell phones and all evidence derived therefrom . . . by investigators in this case."  Doc. No. 391 at 1.  Not only does Barros expressly endeavor to include in this suppression request evidence derived from electronic devices that belonged to third parties, id.,

---

[3] Barros separately contests the admissibility of much of this evidence, gleaned from searches of electronic devices, but his challenges do not justify suppression for reasons explained in section IV of this Order.

[4] The Court considers the facts, which appear to be undisputed, as the parties describe them.  See Doc. No. 397 at 1-2; Doc. No. 441 at 2-4.

he fails to show that he owned, possessed, or otherwise had a legally cognizable expectation of privacy in any device searched, see id. at 6-7 (citing searches of devices linked to two co-defendants, as well as a "burner phone" linked to a stolen rental car).

Under well-settled law ably canvassed by the government in its papers, Doc. No. 439 at 1-8, Barros lacks standing to challenge the searches of cell phones and devices that belonged to others.  See United States v. Symonevich, 688 F.3d 12, 19 (1st Cir. 2012) ("The Fourth Amendment's protection against unreasonable searches may only be claimed where a defendant demonstrates that he or she personally has a reasonable expectation of privacy in the place searched.").  This is so even if those devices contained communications sent by Barros to the third parties who owned or possessed them.  See United States v. Johnson, No. 17-cr-10129-LTS, 2019 WL 917175, at *5-7 (D. Mass. Feb. 25, 2019) (finding defendant lacked standing to challenge emails he sent to a third party where the government obtained them via a search of the third party's account).  To the extent Barros suggests the government's intent to offer the challenged evidence against him somehow imbues him with standing where he otherwise lacked it, Doc. No. 391 at 1, 4, he is wrong.  Such a view would turn the firmly established doctrine of Fourth Amendment standing upside down.

In sum, Barros's remarkably broad request is without any basis in the law.  His Motion to Suppress Evidence Discovered Pursuant to Searches of Cell Phones (Doc. No. 391) is DENIED.

V.     **PHYSICAL EVIDENCE**

Barros's final motion challenges evidence seized during two distinct encounters he had with police, both of which arose from the stops of cars in which Barros was a passenger.  Doc.

No. 392.  The Court will address each encounter in turn.[5]  The parties' submissions, including Barros's affidavits, reveal no material fact disputes.  See Doc. Nos. 392, 392-1, 392-2, 392-3, 442, 442-1, 442-2, 442-3.  Thus, no hearing is warranted.[6]

    A.  February 2018: Boston

Boston police were in the area of 32 Clayborne Street on February 1, 2018, prepared to execute search warrants for the basement apartment at that address and the person of Sandro Pereira.[7]  The warrants arose from a drug investigation that had featured multiple controlled purchases of heroin from the relevant apartment by a confidential informant.  The investigating officers understood Pereira associated with Barros, whom they believed to be a member of NOB involved with drug distribution and acts of violence.  While surveilling the basement apartment before initiating the authorized searches, officers saw a car arrive and park, then observed its occupants enter the basement apartment.  Thereafter, officers saw two people emerge from the apartment, get back into the car, and drive away.  Believing one of the people might have been Pereira, the officers watching the apartment instructed other officers in the area to stop the car, which they identified by a description including its license plate number.

---

[5] Barros bears the burden to establish a violation of the Fourth Amendment.  United States v. Young, 835 F.3d 13, 19 (1st Cir. 2016).  Only after Barros has shown he was subjected to a warrantless seizure or search does the burden shift to the government to establish the intrusion was nonetheless lawful.  United States v. Field, 823 F.3d 20, 25 (1st Cir. 2016); United States v. Harrington, --- F. Supp. 3d ----, 2021 WL 3887250, at *1 (D.N.H. Aug. 31, 2021).

[6] There is no "presumptive right to an evidentiary hearing on a motion to suppress."  United States v. D'Andrea, 648 F.3d 1, 5 (1st Cir. 2011).  To establish entitlement to such a hearing, a "defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to" suppression.  United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996).

[7] Pereira is not charged in this case.  It appears he was one of nine defendants charged in a separate indictment alleging a drug trafficking conspiracy, to which he pled guilty and was sentenced by another session of this Court last fall.  See United States v. Cortez, No. 20-cr-10198-FDS, ECF Nos. 248, 423, 430.  One of Pereira's co-defendants in that case was the brother of one of Barros's co-defendants in this case and, according to investigators, a drug supply source used by Barros.  See Doc. No. 393-1 at 15.

Shortly thereafter, two officers saw the car and stopped it. Pereira was not in the car; Barros was the passenger with a female driver. Officers directed Barros to get out of the car, and he complied. One officer conducted a pat frisk, felt a hard object in Barros's groin area, and held Barros's arm while his partner came to assist. When asked if the object was a weapon, Barros said "no, it's drugs." He complied when the officer directed him to remove the object and place it on the ground. The object was more than 100 grams of cocaine wrapped in plastic.[8] Barros was arrested, and the driver of the car was allowed to leave.

Barros seeks to suppress the cocaine as well as his statement to police. Doc. No. 392 at 4-6. The record does not support his challenge to any aspect of the February 2018 encounter.

First, the stop. Barros does not dispute that police: had valid warrants to search the basement apartment and Pereira; believed that narcotics were routinely bought and sold in that apartment; observed occupants of the car at issue enter and later exit the apartment; and believed Pereira might have left the apartment in the car.[9] These uncontested facts certainly justified the stop of the car. The government points to ample law persuasively explaining why this is so. See Doc. No. 442 at 6-10 (citing cases permitting stop based on reasonable belief target of warrant was in vehicle, even if belief was incorrect, and cases finding reasonable suspicion based on observed connection between vehicle's occupants and location where criminal activity was known or believed to have occurred). Barros identifies no contrary authority. See Doc. No. 392 at 5-6 (focusing instead on propriety of frisk).

---

[8] It appears the cocaine seized in this encounter forms the basis for Count Eight in the Second Superseding Indictment. Doc. No. 398 at 16.
[9] Barros's own exhibits corroborate, rather than contest, these facts. E.g., Doc. No. 392-1 at 23-26 (referencing search warrants, drug transactions, and basis for stop of car).

7

Second, the frisk.  Barros does not dispute that the officers who stopped the vehicle at issue: believed the occupants of the car had just left a location where heroin was known to be bought and sold; recognized Barros; thought Barros was associated with a known street gang; believed Barros had been involved in acts of violence, including shootings; and understood Barros to have been involved in the distribution of narcotics and associated with Pereira.  These uncontested facts, essentially ignored by Barros, squarely supported the decision to conduct a frisk.  Compare Doc. No. 392 at 5-6 (noting only that Barros was not the target of the investigation, was compliant, and did not seem nervous), with Doc. No. 442 at 10-12 (citing authority supporting the reasonableness of the officers' concern for safety and suspicion that Barros might be armed in the circumstances as the officers understood them); see also Arizona v. Johnson, 555 U.S. 323, 330-33 (2009) (discussing the scope of an officer's authority to conduct a frisk of a passenger during a lawful car stop); United States v. Woodrum, 202 F.3d 1, 6-7 (1st Cir. 2000) (allowing for deference "to the experienced perceptions of the officers" whose conduct is challenged, assuming the perceptions are reasonable and arise at least in part from facts "particular to the" defendant).

Finally, the seizure of the hard object.  Barros does not contest that the officer felt a hard object while patting down the exterior of his clothing, nor does he offer any facts or argument suggesting the officer could not reasonably have wondered whether that object was a weapon.[10] He does not dispute that the officer promptly asked a single question aimed at discerning the nature of the object, or that Barros identified the object as drugs in response to the question. Though Barros urges that he was "clearly seized in a constitutional sense" and implies he was

---

[10] He does not, for example, describe the size or shape of the item and urge that its features were so distinct from any possible weapon that further exploration of it by the officer exceeded the permissible scope of a frisk.

8

entitled to Miranda warnings, Doc. No. 392 at 4-5, neither the facts nor the law support his view here.  Settled and binding law makes clear that a person detained during a lawful traffic stop is not "in custody" for purposes of the Fifth Amendment.  See Doc. No. 442 at 12-13 (citing cases); see also Harrington, 2021 WL 3887250, at *8 (finding "single question from an officer in the context of a Terry frisk," aimed at identifying object felt during frisk following car stop and yielding response identifying object as drugs, did not constitute "custodial interrogation").  In this context, the law "afford[s] officers some latitude to question witnesses about issues for which the officers have reasonable suspicion."  United States v. Arnott, 758 F.3d 40, 45 (1st Cir. 2014).  Because nothing in the record before the Court transforms the February 2018 encounter from a lawful investigatory traffic stop into a de facto arrest or otherwise custodial interrogation, there is no basis to suppress the evidence recovered as a result of that interaction.[11]

### B.  December 2018: East Bridgewater

On the afternoon of December 17, 2018, an East Bridgewater Police Detective saw two people known to him as drug users outside what the detective understood to be their residence.  The individuals appeared to be waiting for someone, as one person was seen using a cell phone and neither was dressed appropriately for the cold weather.  About ten minutes after noticing the two people, the detective saw a black Nissan with tinted windows drive up.  The detective could not see the occupants of the Nissan due to the dark tint.  One of the people waiting signaled to the car, then approached it and leaned inside the front passenger window.[12]  After about thirty

---

[11] Once Barros identified the object as narcotics, officers had probable cause to seize the object and arrest him.  His motion neither describes in any detail nor advances any developed argument challenging any other statements that arose after or as a result of this interaction.

[12] Barros's recitation of facts in his motion deviates from the underlying police report in certain respects.  See Doc. No. 442 at 16 n.3 (citing discrepancies regarding which person waved upon the approach the car and which person leaned into the car's window).  These appear to be minor errors, not meaningful factual disputes, and they are immaterial to the resolution of the motion in

seconds, the person returned to the house with his hands in his pockets.  The tint prevented the detective from seeing what transpired inside the car, which then drove away.

The detective followed the Nissan until another officer, at the detective's direction, stopped the vehicle.  A man named Sean Brown was the driver, and Barros was the only passenger.[13]  Both men complied when asked to get out of the car, and both were placed in handcuffs.  Officers ran record checks and learned that both Brown and Barros had open state-court cases in which they were charged with trafficking drugs.  Meanwhile, other officers returned to the location where the detective had observed the interaction he believed had been a drug transaction.  The person the detective had seen lean inside the car told the officers he had bought heroin from the driver of the car, who also appeared to have cocaine on his lap.  The person said he had already used the heroin, and he appeared to be high.  Based on this information, police arrested both Brown and Barros.  Searches of the men and the car incident to the arrests yielded:  $600 and a cell phone from Barros; $1,200 and two cell phones in the center console of the car; and 28 grams of cocaine from Brown.

Barros mounts a two-paragraph challenge to this sequence of events, seeking to suppress "the evidence obtained therefrom."  Doc. No. 392 at 3-4.  His argument does not establish a basis for either an evidentiary hearing or suppression.  As above, the Court will address the lawfulness of each phase of the relevant encounter.

---

any event.  Barros has not argued that the report's description of the events transpiring before the car stop was false or misleading, nor does his affidavit describe those events.

[13] Brown is not charged in this case, though it appears the December 2018 traffic stop at issue here formed a basis for his guilty plea before another session of this Court last year to an information charging him with a drug distribution offense.  See United States v. Brown, No. 20-cr-10288-PBS, ECF Nos. 1-1, 23, 30.

The stop, which is the primary (and arguably the exclusive) focus of Barros's brief argument, was plainly lawful, twice over. The detective who ordered the stop observed the Nissan and explained that its windows were tinted so dark as to prevent him from even seeing how many occupants were inside the car. Barros notes that the detective did not support this observation with the use of a "tint meter" and that no officer issued a citation for excessive tint. Doc. No. 392 at 3. However, he does not assert (in this brief or his affidavit) that the windows were not tinted, that they were tinted but complied with relevant laws, that the detective overstated the degree of tint, or that the detective was not qualified or able to assess the tint as he purported to do in his description of the events. Cf. United States v. Villar-Guerrero, No. 19-cr-10439-IT, 2022 WL 952762, at *4 (D. Mass. Mar. 30, 2022) (discussing degree of tint permitted by Massachusetts law and circumstances under which an officer may reasonably initiate a stop for violation of that law). In these circumstances, Barros has not articulated a basis for finding the Nissan could not have been stopped based on a suspicion of excessive window tint. See United States v. McGregor, 650 F.3d 813, 820 (1st Cir. 2011) (endorsing car stop based on observed traffic offense "even if the stop is just an excuse to investigate something else").

Even if that were not the case, the detective who ordered the stop did so after observing what he believed to have been a drug transaction involving the occupant(s) of the Nissan. Though Barros summarily states that those observations "did not constitute a sufficient basis to stop the motor vehicle," Doc. No. 392 at 3 (emphasis in original), he offers no explanation for why he believes that is so. Importantly, he does not dispute (in his brief or his affidavit) the detective's rendition of the events that preceded the stop.[14] See United States v. Perez, 977 F.3d

---

[14] For example, Barros does not claim the Nissan never stopped, or that no person leaned inside it using the window nearest Barros's seat. Nor does he contest the detective's explanation of his

163, 168 (1st Cir. 2020) (permitting investigatory stop of vehicle in highly analogous circumstances). The facts recited by the detective plainly created (at least) reasonable suspicion to justify the stop of the Nissan. Thus, Barros has not satisfied his burden of establishing that the stop of the Nissan violated his constitutional rights.

Looking beyond the stop itself, the record does not support a finding that any conduct by the police violated Barros's constitutional rights. Once the occupants were secured outside the car, officers elected not to immediately frisk, search, question, or arrest them. Rather, they took reasonable steps to investigate and corroborate the suspicions they developed based on the detective's initial observations. In doing so, they learned from state probation records that both Brown and Barros had been arrested for drug distribution offenses in the past, and they learned from the suspected buyer that he had purchased drugs from Brown that day. As the government explains in its memorandum, Doc. No. 442 at 17-20, the officers acted not only cautiously but lawfully in undertaking this approach and ultimately arresting—and only then searching—Barros and Brown. Nothing in the record suggests that, by proceeding as they did, the officers unduly prolonged the car stop or otherwise exceeded the permissible scope of their authority.

Accordingly, Barros's Motion to Suppress Physical Evidence (Doc. No. 392) is DENIED.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

---

background knowledge of the people he saw on the street or his capacity to deduce that what he had observed was probably a drug transaction.